UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-248-MOC

| | |
|---|---|
| DIANA RODRIGUEZ, )<br>)<br>      **Plaintiff, pro se,** )<br>)<br>vs. )<br>)<br>WELLS FARGO BANK, N.A., )<br>)<br>)<br>      **Defendant.** )<br>_____ ) | **ORDER** |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant Wells Fargo Bank, N.A. (Doc. No. 58). Plaintiff has responded in opposition and Defendant has replied. (Doc. Nos. 63, 65). Plaintiff subsequently filed a surreply. (Doc. No. 67).

**I. BACKGROUND**

    **a. Procedural Background**

Plaintiff filed this action against her former employer Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") on May 25, 2021, after her employment was terminated. (Doc. No. 1). This Court, by Order dated September 16, 2021, dismissed certain claims from Plaintiff's Complaint because they were not alleged in Plaintiff's Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination and held that Plaintiff was barred from basing her claims on events that preceded August 16, 2020. (Doc. No. 19 at 8). Plaintiff's remaining claims are: (1) discriminatory termination from employment based on her age (54 years old at the time of termination) under the Age Discrimination in Employment Act ("ADEA"); (2) discriminatory termination from employment due to a purported disability under the Americans

1

with Disabilities Act ("ADA"); (3) failure to accommodate under the ADA; (4) hostile work environment under the ADA and ADEA; (5) retaliatory termination under the ADA; and (6) "Whistle Blower Retaliation" regarding Plaintiff's termination, for which no statute is identified.

Defendant filed a Motion for Summary Judgment on April 24, 2023. (Doc. No. 58). Plaintiff filed a Response, Defendant filed a Reply, and Plaintiff filed a Surreply. (Doc. Nos. 63, 65, 67). The Court held a hearing on the Motion for Summary Judgment on June 22, 2023.

### b. Factual Background

Plaintiff was employed by Defendant on January 23, 2012, as a Capital Markets Analyst I at Defendant's Charlotte, North Carolina location. See generally (Doc. No. 1-1, Pl. Dep. 17:24–19:16). Around three years later, Plaintiff was promoted to Capital Markets Analyst II, where she remained until the time of her displacement. (Id. at 19:6–16).

Plaintiff and all others on her team began working remotely on March 18, 2020, and had no in-person contact with any co-worker from this date on. Plaintiff and other employees were notified on October 27, 2020, that their employment would end in sixty days, on December 25, 2020, as a result of a reduction in force ("RIF"). (Doc. No. 58 at 1). Defendant states that Plaintiff's displacement was the result of a change in reconciliation systems, the accounting system by which two sets of records are compared to check that they are in agreement and correct. (Doc. No. 59 at 3). Defendant decided to switch from a Realm reconciliation system to Loan IQ, a business decision that eliminated costs and affected Wells Fargo employees outside of just the team Plaintiff was working in. (Doc. No. 58-7, Pryor Dep. 62:25–66:8; Doc. No. 58-3, Finkle Dep. 64:5–10; Doc. No. 58-8, Primavera Dep. 57:10–16). This change from Realm to Loan IQ, according to Defendant, eliminated Plaintiff's functions and position. The RIF document states that Plaintiff spent "90% of their time supporting activity that will go away with

the loan system consolidation." (Doc. No. 63-2 at 63). A younger Capital Markets Analyst, Ashley Artman, was also discharged in the RIF. (Doc. No. 65 at 16). At the time of her termination, Plaintiff was 54 years old and the oldest analyst in her work group. (Doc. No. 59 at 1; Doc. No. 63 at 4). Plaintiff suffered at the time from generalized anxiety disorder and asthma. (Doc. No. 63 at 7).

Before August 16, 2020, one of Plaintiff's managers, Michael Pryor made the comment, "She is that old? I thought she was young. God, she is older than me." (Doc. No. 63-2 at 47). After August 16, 2020, a Wells Fargo employee, Kimberly Capps, commented that Plaintiff had wasted ten minutes during a late October 2020 teleconference meeting. Specifically, Kimberly Capps' commented in a meeting on October 13, 2020, "we have been on the phone for 10 minutes and nothing is being done… Why are we doing this? We've been here for 10 minutes and we haven't done anything." (Doc. No. 63-1 at 14).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for

3

summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

### III. DISCUSSION

#### a. Plaintiff has Failed to Show Defendant Engaged in Age Discrimination

Plaintiff puts forth no direct evidence of age discrimination in their complaint. "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact ... without any inference or presumptions." Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 958 (5th

4

Cir. 1993). While derogatory remarks may constitute direct evidence of discrimination, these may not be stray or isolated remarks, and must have a nexus to the adverse employment action. Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 1999) (quoting McCarthy v. Kemper Life Ins. Cos., 924 F.2d 683, 686 (7th Cir.1991)). Plaintiff points to two remarks as evidence of discrimination: Michael Pryor's comment that he was surprised by Plaintiff's age, and Kimberly Capps' comment in October 2020 that within 10 minutes of a meeting nothing had been done. (Doc. No. 70 at 91-92; Doc. No. 59 at 4). These remarks, on their own, do not suggest the existence of discrimination. Michael Pryor's comment was made before August 16, 2022, and Plaintiff's remaining claims are limited to claims "based on events that occurred after August 16, 2020." (Doc. No. 19 at 8–9). Furthermore, there is no evidence that Capps' statement was made in the context of terminating Plaintiff's employment. Ultimately, the decision to migrate from Realm to Loan IQ, the event that led to Plaintiff's discharge, was not made by any of the managers that Plaintiff interacted with. (Doc. No. 59-7, Pryor Dep. 66:9–18, 67:9–17; Doc. No. 59-2, Capps Dep. 97:24–98:6; see also Doc. No. 59-3, Finkle Dep. 29:15–22 (stating that managers other than Finkle would not have known about Plaintiff's complaints)). Therefore, these comments do not appear to bear a nexus to the adverse employment action. For these reasons, Plaintiff has put forward only indirect evidence of discrimination.

      When a Plaintiff provides no direct evidence of discrimination, the McDonnell Douglas framework applies. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas burden-shifting framework, Plaintiff must rely on indirect evidence to set forth a prima facie case in support of each claim. Id. The burden begins with Plaintiff to put forward a prima facie case of discrimination. Id. In reduction-in-force cases, a prima facie showing of age discrimination means that a plaintiff has shown they were (1) protected by the

5

ADEA; (2) selected for discharge from a larger group of candidates; (3) performing at a level substantially equivalent to the lowest level of those of the group retained; and (4) the process of selection produced a residual work force of persons in the groups containing some unprotected persons who were performing at a level lower than that at which he was performing. Mitchell v. Data General Corp., 12 F.3d 1310, 1315 (4th Cir. 1993). "This fourth element is usually characterized by stating that a plaintiff must produce some other evidence that the employer did not treat age neutrally." O'Connor, 56 F.3d at 546–57 (quoting E.E.O.C. v. Western Elec. Co., 713 F.2d 1011, 1015 (4th Cir. 1983)).

Plaintiff here has failed to meet the fourth element of this test. Ashley Artman, who was in her twenties at the time of the RIF and held the position of Capital Markets Analyst I, was terminated at the same time as Plaintiff. (Doc. No. 59-4 at 3). Plaintiff argues that this does not show age-neutral treatment in the RIF because they served different functions. (Doc. No. 63 at 6). Plaintiff supports this argument by referring to alleged differences in her RIF job description and performance evaluations from 2019 and 2020. (Doc. No. 70 at 2). However, Plaintiff fails to show how the differences in her and Artman's duties are dissimilar when it comes to those employees impacted by the transition from Realm to Loan IQ. Plaintiff and Artman's roles as Capital Markets Analysts II and Capital Markets Analyst I placed them in the same group of employees selected for termination in the RIF. Moreover, the 2019 and 2020 performance evaluations do not show that Defendant allowed similarly situated unprotected individuals performing at a level lower than Plaintiff to remain in the workforce. Lastly, Plaintiff's job ceased to exist after her departure. The fact that no one was hired to replace Plaintiff further demonstrates that Plaintiff was not discharged for discriminatory reasons.

Because Plaintiff has failed to put forward a prima facie case of age discrimination under

the McDonnell Douglas burden-shifting framework, her claim for discriminatory termination under the ADEA must be dismissed. Irani v. Palmetto Health, 767 F. App'x 399, 415 (4th Cir. 2019) ("[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate non-discriminatory reasons for a discharge.").

### b. Plaintiff has Failed to Show that Defendant Engaged in Disability Discrimination.

Plaintiff has not put forward direct evidence of discrimination under the ADA either, so this claim is subject to the burden-shifting McDonnell Douglas framework as well. Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 572 (4th Cir. 2015) (holding McDonnell Douglas applies to disability discrimination claims). To establish a prima facie case of disability discrimination under the ADA, a plaintiff must prove: (1) she was in the protected class; (2) she was discharged; (3) at the time of the discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. Fields v. Verizon Servs. Corp., 493 Fed. Appx. 371, 375–76 n.4 (4th Cir. 2012).

Disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A). "Major life activities" are not limited to work functions. 42 U.S.C. § 12102(2)(A). Additionally, "the definition of disability… shall be construed in favor of broad coverage of individuals… to the maximum extent permitted…" Plaintiff has shown that her asthma does qualify her as disabled under the terms of this statute. However, Plaintiff has only alleged that her generalized anxiety disorder limited her ability to work with Kimberly Capps. At the time of her termination, Plaintiff worked remotely and had no in person contact with her co-workers. Plaintiff only addresses her

7

generalized anxiety disorder and resulting stress in the context of remote work by saying:

> "My stress levels were the same at home, as if I were physically in the office, because I thought we would be back in the office within weeks, and the discrimination and hostility would continue. The only exception while working from home is that I wasn't afraid that Kimberly Capps would physically hurt me. In the office I was afraid for my life, thinking that Kimberly Capps might snap and physically hurt me."

(Doc. No. 63 at 3). Plaintiff's stress from her fear of Kimberly Capps does not qualify as a disability. See, e.g., Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1062 (7th Cir. 2000) ("A personality conflict between an employee and a supervisor—even one that triggers the employee's depression—is not enough to establish that the employee is disabled, so long as the employee could still perform the job under a different supervisor."); Frantz v. Shinseki, No. 1:10cv275, 2012 WL 259980, at *8 (M.D.N.C. Jan. 27, 2012) ("...The inability to work with particular co-workers or supervisors does not create a substantial limitation on the major life activity of working."); see also Knight v. McCarthy, No. 1:19cv262, 2020 WL 759891, at *10 (E.D. Va. Feb. 13, 2020) (rejecting claim that the plaintiff's "panic anxiety disorder" affected her ability to work with her supervisor and that her employer failed to accommodate her alleged disability by refusing to remove her from that individual's supervision); Comber v. Prologue, Inc., No. CIVJFM-99 2637, 2000 WL 1481300, at *3 (D. Md. Sept. 28, 2000) (finding that the plaintiff was not substantially limited in her ability to work when she claimed she could perform her job "but for her troubled relationship with her former colleague"); Kolpas v. G.D. Searle & Co., 959 F. Supp. 525, 530 (N.D. Ill. 1997) ("[M]erely not being able to work for particular individuals because of stress and anxiety is [...] not a substantial limitation on the major life activity of working.").

Although Plaintiff's asthma qualifies as a disability, Plaintiff has failed to raise a reasonable inference that her asthma was the "but for" cause of her termination. Gentry v. East

8

West Partners Club Mgmt. Co., 816 F.3d 228, 235–36 (4th Cir. 2016) (holding that there is a "but for cause" standard for wrongful termination claims under the ADA). The comments made by Michael Pryor and Kimberly Capps after August 16, 2020, do not suggest that Plaintiff's asthma was the reason for her termination either. Because Plaintiff has failed to raise a reasonable inference that her termination was the cause of unlawful discrimination, this claim must be dismissed.

### c. Plaintiff Has Not Shown That Defendant Failed To Reasonably Accommodate Her Disability.

To prove a prima facie case of an ADA failure to accommodate claim, a plaintiff must show: (1) she was an individual with a disability within the meaning of the statute; (2) her employer had notice of her disability; (3) with a reasonable accommodation she could perform the essential functions of his position; and (4) her employer refused to make such accommodations. Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013).

At the time of her termination, Plaintiff was working remotely. Plaintiff has not shown that she was unable to perform the essential functions of her position without a reasonable accommodation for her asthma while working remotely, that she requested an accommodation for her asthma, or that Defendant refused to make any such accommodation. Instead, Plaintiff refers to continued issues with Kimberly Capps after informing Todd Primavera and Gary Finkle of her generalized anxiety disorder and asthma. (Doc. No. 63 at 7–8). However, at the time of Plaintiff's termination she did not have in-person contact with Kimberly Capps.

Moreover, Plaintiff failed to show that her generalized anxiety disorder qualified as a disability qualifying for accommodation under 42 U.S.C. § 12102. And, any accommodation to change Plaintiff's co-workers, including Kimberly Capps, for the purpose of ameliorating her

9

stress would be unreasonable as a matter of law. See, e.g., Coulson v. Goodyear Tire & Rubber Co., 31 Fed. App'x 851, 858 (6th Cir. 2002); Gaul v. Lucent Techs., Inc., 134 F.3d 576, 581 (3d Cir. 1998); Weiler v. Household Fin. Corp., 101 F.3d 519, 526 (7th Cir. 1996). Because Plaintiff has not shown that Defendant failed to accommodate her disability, Plaintiff's claims for failure to accommodate under the ADA must be dismissed.

### d. The Undisputed Facts Do Not Support Plaintiff's Hostile Work Environment Claim Under the ADA.

"[A]n ADA plaintiff must prove the following to establish a hostile work environment claim: (1) [s]he is a qualified individual with a disability; (2) [s]he was subjected to unwelcome harassment; (3) the harassment was based on [her] disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." Fox v. Gen. Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001) (citing Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999)). The severe and pervasive element of a prima facie case is a high bar. E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008).

Plaintiff has failed to show sufficiently severe or pervasive harassment to alter a term, condition, or privilege of employment. After August 16, 2020, Plaintiff cites only one comment in support of a claim for a hostile work environment. During a meeting on October 13, 2020, Kimberly Capps said, "We have been on the phone for 10 minutes and nothing is being done… Why are we doing this? We've been here 10 minutes and we haven't done anything." (Doc. No. 63-1 at 14). This comment does not meet the fourth element of a prima facie case of a hostile work environment under the ADA. To meet this element, "[t]here must be evidence of something more than 'rude treatment by coworkers, callous behavior by one's supervisors, or a routine

10

difference of opinion and personality conflict with one's supervisor.'" Tate v. Auto Truck Transport USA, LLC., Doc. No. 3:17-cv-00296-RJC-DSC, 2018 WL 3873600 (W.D.N.C. Aug 15, 2018) (quoting E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008)). Therefore, Plaintiff's allegations fail to support a finding that Plaintiff suffered severe and pervasive harassment. Because Plaintiff has failed to show sufficiently severe and pervasive harassment, her claims for a hostile work environment must be dismissed.

### e. Plaintiff's Allegations Do Not Support a Claim of Retaliation Under the ADA.

To make a prima facie case of retaliation, Plaintiff must prove (1) that she engaged in protected activity, i.e., statutorily protected participation or opposition; (2) that an adverse employment action was taken against her; and (3) that there was a causal link between the participation/opposition protected activity and the adverse employment action. Laughlin v. Metro. Wash. Airports, 149 F.3d 253, 258 (4th Cir. 1998). Protected activity means opposing any act or practice made unlawful by the ADA, or making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under the ADA. 42 U.S.C.A § 12203.

Because this Court has found that there have been no violations of the ADA, including Kimberly Capps' comment on October 13, 2020, Plaintiff has not engaged in protected activity by opposing acts or practices made unlawful by the ADA. Further, Plaintiff had not participated in any manner in an investigation, proceeding or hearing under the ADA at the time of her termination. Because Plaintiff has not engaged in protected activity, the claim for retaliation under the ADA must be dismissed.

### f. "Whistleblower retaliation"

Plaintiff does not cite a federal statute for the claim of "whistleblower retaliation." (Doc. No. 1 at 3). A state common law claim of whistleblower retaliation cannot be pursued because Plaintiff indicated that this claim was being sought under "other federal law." Id. Without any applicable legal standard, this Court cannot ascertain the viability of Plaintiff's claim. Accordingly, Plaintiff has failed to raise a genuinely disputed issue of material fact as to her whistleblower retaliation claim and this claim must be dismissed.

## IV. CONCLUSION

For the reasons stated herein, Defendant is entitled to summary judgment.

### ORDER

**IT IS, THEREFORE, ORDERED** that:

1) Motion for Summary Judgment filed by Defendant Wells Fargo Bank, N.A., (Doc. No. 58), is **GRANTED**, and this action is dismissed with prejudice.

2) Defendant's Motions to Strike, Doc. Nos. 66 and 71, are **TERMINATED** as **MOOT**.

3) Plaintiff's Motion to Strike, Doc. No. 72, is **TERMINATED as MOOT**.

Signed: August 24, 2023

Max O. Cogburn Jr
United States District Judge